**UNITED STATES BANKRUPTCY COURT**   **NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:                                                              Chapter 11

FEREYDOON ABIR,                                                     (INVOLUNTARY)

                         Debtor.                  Case No. 07-12877 (ALG)
------------------------------------------------------------------x

**MEMORANDUM OF OPINION AND ORDER**

A P P E A R A N C E S:

NEIMAN & MAIRANZ P.C.
Petitioning Creditor, *Pro Se*
  By:   Marvin Neiman, Esq.
39 Broadway – 25th Floor
New York, New York 10006

BERKMAN, HENOCH, PETERSON & PEDDY, P.C.
Attorneys for Malky, Inc.
  By:   Ronald M. Terenzi, Esq.
         Bruce D. Mael, Esq.
100 Garden City Plaza
Garden City, New York 11530

JASPAN SCHLESINGER HOFFMAN LLP
Attorneys for Debtor
  By:   Joel Lewittes, Esq.
300 Garden City Plaza
Garden City, New York 11530

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is a motion brought by Malky, Inc. ("Malky"), an alleged

secured creditor, to dismiss an involuntary Chapter 11 petition filed against Fereydoon

Abir (the "Debtor"), or, in the alternative to convert the case to Chapter 7. In the absence

of such relief, Malky requests that the Court terminate the automatic stay pursuant to 11

U.S.C. § 362(d)(1) with regard to its rights and remedies against the Debtor's home in Kings Point, New York (the "Property"). The Debtor has not contested the involuntary filing and has in fact by separate motion asked this Court to take jurisdiction over the case but abstain from taking any action in it, pursuant to 11 U.S.C. § 305, until an appeal in the New York State courts has been decided.

For the reasons given below, Malky's motion to dismiss is granted. The other motions are denied as moot.

## BACKGROUND

This involuntary case is the latest episode in litigation over a mortgage in the principal amount of $1,500,000 on the Property, dating from December 28, 1990. The mortgage is now held by Malky. As the State Court has found, the Debtor and his wife defaulted on their obligations under the mortgage "by failing to pay installments due in February, 1995 and thereafter." *Fereydoon Abir and Flora Abir v. Malky, Inc., et al.*, No. 6938-03, slip op. at 2 (Nassau County. Sup. Ct. June 30, 2004) (hereinafter "*Abir I*"). The original holder of the mortgage, Bank of America, commenced a foreclosure action in the Nassau County Supreme Court in October 1995, a judgment of foreclosure and sale was entered in August 2000, and a foreclosure sale was scheduled for December 2001. *Id.*

Between commencement and judgment in the foreclosure action, the Abirs engaged an attorney to help them find a means to avoid foreclosure, and he in turn proposed a financing transaction with one of his clients, Joseph Brach. After several possible arrangements had failed, and a judgment of foreclosure had been entered on August 18, 2000, the Abirs apparently accepted Brach's proposal. Thereafter, it further

2

appears, a corporation called Malky, Inc. wholly owned and controlled by Brach, was formed, and Malky entered into a Forbearance Agreement with the Abirs, pursuant to which Malky would forbear from foreclosing on the Abirs' home for ten months and the Abirs would pay Malky $1,665,000. On or about December 19, 2001, Malky entered into a Note Sale Agreement with Bank of America, pursuant to which Malky purchased the mortgage for approximately $1.3 million and received Bank of America's rights under the judgment of foreclosure, worth over $2.1 million. The Abirs apparently failed to make any payments on the mortgage during the ten-month grace period, and Malky notified the Abirs that they were in default.

On October 31, 2002, the Abirs sued Malky, the lawyer, and others for fraud, malpractice, and breach of fiduciary duty in Supreme Court, Kings County (*Abir I*). In *Abir I*, the Abirs were represented by a law firm that is now the sole petitioning creditor (the "Petitioning Creditor").[1] After the case was transferred to Nassau County, where the Property is located, the Abirs moved for a preliminary injunction enjoining any foreclosure sale. Malky cross-moved to dismiss and to consolidate the Abirs' action with the foreclosure action. The State Court denied Malky's motions to dismiss the complaint and to vacate the stay of the foreclosure sale, and granted the Abirs a preliminary injunction staying the foreclosure, conditioned on a $100,000 undertaking. *Abir I* at 18.

Both Malky and the Abirs moved for reargument and review of the requirement that a $100,000 undertaking be filed – Malky requesting that the undertaking be increased, the Abirs requesting that there be no undertaking at all. On February 1, 2006, the State Court ordered that the Abirs post a bond of $500,000 on or before February 8,

---

[1] This was not the only time the Petitioning Creditor has represented the Abirs. In a deposition taken in connection with these motions, the Debtor said the Petitioning Creditor had represented him in other matters for years. (Deposition October 22, 2007 (hereinafter "Dep.") at 18-21.)

3

2006, as a condition to obtaining a preliminary injunction halting the foreclosure sale. Malky then moved for judgment, the Abirs failed to post the required bond, and a foreclosure sale was scheduled for March 21, 2006.

On March 6, 2006, a little over four years after Malky and the Abirs had entered into their arrangement and over eleven years after the Abirs had ceased making any payments on their mortgage, the Abirs jointly filed a voluntary Chapter 11 petition in the Bankruptcy Court for the Eastern District of New York, Case No. 06-70441-288. The Petitioning Creditor was listed as a partially secured creditor for its legal fees based on a confession of judgment. Since the Petitioning Creditor had a claim against the Abirs, it could not and did not represent the Abirs as debtors in possession in the Eastern District bankruptcy case.

In the Eastern District Chapter 11 case, the Abirs initially sought to remove the foreclosure proceedings to the Bankruptcy Court, but on May 31, 2006, the Bankruptcy Court remanded the foreclosure back to the Nassau County Supreme Court. The Debtors in the Chapter 11 case then sought leave for the Petitioning Creditor to continue representing them in the foreclosure case, but the Court instead directed that the Debtor's present counsel represent them in State Court as well as in the Chapter 11 case.

In mid-April, 2006, the United States Trustee moved for an order dismissing the Abirs' Chapter 11 case on the ground that there was no evidence the Debtors would be able to reorganize, given their alleged income and assets. The motion was adjourned to give the Abirs time to file a confirmable plan of reorganization. A plan was filed in mid-June, providing for a return to creditors that depended entirely on the Abirs prevailing over Malky in State Court and voiding the mortgage for usury or fraud. At the end of

4

June, the U.S. Trustee renewed its motion to dismiss, arguing in effect that the bankruptcy case was a delay tactic and that any distribution was contingent on success in the State courts. (Amended App. of U.S. Trustee, Malky's App., Exh. G.)

On September 21, 2006, the parties informed the Bankruptcy Court through their counsel they had agreed to settle. (Tr. of September 21, 2006 Hearing, Malky's Application, Exh. I.) The Abirs would either sell the property by a specified date or the Court would hold an auction, Malky would reduce its claim, and the Abirs' case would be dismissed with prejudice. At a hearing on October 5, 2006, however, the Abirs refused to go forward with the settlement, and the Court scheduled an evidentiary hearing on the U.S. Trustee's motion. The hearing was never held, however, and on November 1, 2006, the Abirs agreed to dismiss the Eastern District Chapter 11 case, and the case was dismissed. (Stipulation and Order of Dismissal, Malky's App., Exh. K.)

Now back in Nassau County, the Abirs moved for summary judgment against Malky. Over the course of the State litigation, the main issue between the parties had been narrowed to "whether or not the transaction between Malky and the Abirs was, in substance if not in form, a usurious loan." *See* the Supreme Court's second opinion in *Fereydoon Abir and Flora Abir v. Malky, Inc., et al.*, No. 6938-03, slip op. at 4 (Nassau County Sup. Ct. May 10, 2007) (hereinafter "*Abir II*"). In a decision dated April 18, 2007, the Court found that the transaction between Malky and the Abirs, the Note Sale Agreement and the Forbearance Agreement, was in substance "a reduced, high-interest, short-term debt for the Bank of America Loan." *Abir II* at 7. The Court calculated the annual interest on the loan to be 70.2% on the original investment and found the transaction usurious. *Id.* The Court voided the Forbearance Agreement between Malky

5

and the Abirs, but it refused to void the assigned Bank of America loan and judgment of foreclosure, finding that such relief would give the Abirs property worth over $3,000,000 free and clear of the mortgage where they had paid nothing on that debt for twelve years.[2] Both parties moved for reargument and on August 8, 2007, the State Court again held that Malky could recover under the assigned mortgage and judgment of foreclosure and sale. It also vacated any order staying the foreclosure sale, and Malky rescheduled the sale for September 18, 2007. On September 11, 2007, the Abirs made an application to the State Court to stay its April and August orders pending appeal, but the State Court refused grant the stay unless the Abirs posted a bond pursuant to CPLR 5519(a). They failed to do so.

On September 12, 2007, the Petitioning Creditor filed the instant case in this Court. The Petitioning Creditor alleges it holds a claim for legal fees in the amount of $365,025, of which $114,800 is unsecured, that the Debtor has fewer than 12 creditors, permitting it to file the involuntary petition as a single creditor, and that its claim is not the subject of a *bona fide* dispute. Shortly after the involuntary petition was filed, Malky filed the motions described above. The Court held a hearing on October 10, 2007, adjourned it in order to allow the parties to take discovery and then held a second hearing on October 31, 2007, at which the Debtor appeared for the first time through counsel. At

---

[2] The Court stated:
> Uniting the propositions that: (1) a usurious extension of a loan does not extinguish the original obligation; and (2) a finding of usury relieves the borrower of the obligation to repay the principal of the loan; this Court determines that the Bank of America Loan and Judgment of Foreclosure shall remain undisturbed and enforceable by Malky, but the Abirs shall be relieved of their obligation to pay the $1.325 principal of the usurious loan, which shall be offset against the balance due under the Judgment of Foreclosure on the closing date of this transaction (December 18, 2001), as if it had been received by the Abirs on such date and immediately applied to their outstanding debt.

*Abir II* at 9.

the second hearing, on consent of all parties, the Court lifted the automatic stay to allow both Malky and the Abirs to pursue the appeal and cross-appeal in the State courts.

## DISCUSSION

Malky has moved for dismissal on the grounds of bad faith, or, in the alternative, for conversion to a Chapter 7 liquidation, or for relief from the automatic stay. The Debtor asks this Court to reject Malky's motions but to abstain from further action herein pending appeal by both parties of the State court proceedings. The Court need only reach the first issue, because it finds that a combination of factors clearly requires dismissal on grounds of bad faith.

It is well-established that courts have authority to dismiss an involuntary Chapter 11 petition filed in bad faith, and that a badge of bad faith justifying dismissal is cooperative or concerted action between the putative debtor and a friendly or sympathetic petitioning creditor. The leading case on the issue in this Circuit is *F.D.I.C. v. Cortez*, 96 F.3d 50 (2d Cir. 1996). There, the Circuit Court held *per curiam* that the Federal Deposit Insurance Corporation ("FDIC") had not violated the automatic stay by commencing an action to enforce promissory notes. A Florida bankruptcy court had earlier dismissed the debtor's voluntary petition with prejudice, precluding the debtor from filing another bankruptcy petition for one year. Two months later, the debtor's stepfather filed an involuntary petition against her in California, and the FDIC action on the promissory notes was commenced in alleged violation of that petition. The Second Circuit held that in an involuntary case, the petition may be deemed void when there is concerted action between the debtor and the petitioning creditor and these parties fraudulently invoke the jurisdiction of the bankruptcy court. The Court noted that the debtor had consented to the

7

involuntary proceeding, that it was her stepfather who had brought it, and that her stepfather had been "her attorney-in-fact, her managing agent, her expert witness, and her agent for purposes of settlement." *Cortez*, 96 F.3d at 51.

The Court in *Cortez* cited *In re Winn*, 49 B.R. 237, 239 (Bankr. M.D. Fla. 1985), where the Court had also dismissed an involuntary petition on the basis of bad faith, finding that the involuntary case was merely a second attempt to frustrate a judgment creditor. There, the debtor, an attorney, had prepared the involuntary petition and brought it to the petitioning creditors for signature, and the Bankruptcy Court concluded that the involuntary case was "merely an attempt by the Debtor to accomplish something indirectly which he was unable to accomplish directly, that is, to maintain a viable Chapter 11 case in order to hide under the protection of the automatic stay." *Id.*

Other courts in this circuit have dismissed collusive involuntary petitions bearing indicia of bad faith. In *In re Corto*, 1995 WL 643372 (W.D.N.Y. Oct. 18, 1995), the District Court affirmed the dismissal of an involuntary petition brought by the debtor's mother and son. The debtor had earlier filed a voluntary Chapter 13 case, which the Bankruptcy Court had dismissed with prejudice against refiling for 180 days. The Court noted that even though the mother and son may have had valid claims, "such would not necessarily compel a conclusion that the petition had been filed in good faith." *Id.* at *4. In *In re Grossinger*, 268 B.R. 386 (Bankr. S.D.N.Y. 2001), the Bankruptcy Court imposed sanctions on the petitioning creditor's counsel under § 303(i) for filing in bad faith when it dismissed an involuntary petition filed by a tenant who clearly failed to meet the requirements under § 303 of the Bankruptcy Code. The Court stated, "the potential for collusive filing exists where a 'friendly' creditor files an involuntary petition

8

with no intention of serving the debtor or seeking an order for relief but with the intent of frustrating the rights of a secured creditor or any other creditor whose state court remedies are stayed until the case is closed." *In re Grossinger*, 268 B.R. at 387 (S.D.N.Y. 2001).[3]

Examination of the facts of this case leads to the conclusion that there is sufficient evidence of concerted action between the Debtor and a "friendly" creditor and that their principal purpose in filing the Chapter 11 case was to frustrate the rights of another creditor in its exercise of State court remedies.

There is no question that there was communication relating to the involuntary filing between the partner of the petitioning law firm and the Debtor prior to the commencement of this case. The Debtor admitted it in his deposition taken in connection with the pending motions, conceding that he and a partner of the Petitioning Creditor had talked and that he had provided his address in New York County and his social security number, both useful information for the filing.[4] The partner had earlier represented to the Court that he had had absolutely no contact with the Debtor prior to the filing.[5] This flat misstatement calls into question all of his protestations that there was no collusion between the Debtor and the Petitioning Creditor.

---

[3] The *Grossinger* court cited several cases that found bad faith in an involuntary petition. *See In re Grossinger*, 268 B.R. at 389, citing *Lubow Machine Co. v. Bayshore Wire Products* (*In re Bayshore Wire Products Corp.*), 209 F.3d 100, 105-106 (2d Cir. 2000), noting the "improper use," "improper purpose," and "reasonable person" tests for determining bad faith for § 303(i)(2) purposes; *In re Better Care, Ltd.*, 97 B.R. 405, 410 (Bankr. N.D. Ill. 1989), finding an improper use of the Bankruptcy Code when a creditor uses an involuntary petition to obtain a disproportionate advantage to its relative position; and *In re Dino's, Inc.*, 183 B.R. 779, 783 (S.D. Ohio 1995), holding that an involuntary petition is filed in bad faith when the petitioning creditor did not conduct a reasonable investigation of the law and facts and filed the petition for an improper purpose.

[4] As discussed below, it turns out that the Debtor has no address in New York County.

[5] The partner admitted that he had had some incidental contact with the Debtor's wife, but he concealed any contact with the Debtor.

9

The Debtor's own papers also admit to a degree of collusion between the Debtor and the Petitioning Creditor. The Debtor appeared at the second hearing on Malky's motions and not only endorsed the Chapter 11 involuntary filing but moved to have all further proceedings stayed indefinitely so that the Debtor could prosecute his State appeal without posting the bond required by the State Court. The Debtor's response submitted at that hearing admits that his counsel discussed the subject of an involuntary filing with a partner of the petitioning law firm. (Debtor's Application, dated October 19, 2007, p. 5.) Debtor's counsel further admitted in a deposition that he had spoken to lawyers in the petitioning firm on at least a monthly basis regarding the Debtor and his wife prior to the filing herein, and that he had spoken with a lawyer in the petitioning firm at least three times between August 8, 2007, the date of the State Court judgment, and September 12, 2007, the date of the instant filing. (Lewittes Dep. at 25-29.)

The Debtor's papers claim that the only subject of discussion between the petitioning law firm and the Debtor's bankruptcy counsel was that the law firm might "file an involuntary petition against the Abirs" "in order to protect his claim." (Debtor's App. at 5-6.) Nevertheless there is ample evidence that the firm was not acting as a creditor to protect its own interests but rather as a covert supporter of the Debtor's interests. Debtor's counsel, for example, admitted that he knew the firm was considering filing an involuntary "if it came to a point where it looked like the Abirs were totally painted against in [sic] the corner." (Lewittes Dep. at 13-15.) Debtor's counsel further admits that the involuntary petition was filed to, among other things, "grant the debtor a breathing spell . . ." (Debtor's App., p. 7.)

10

These admissions are consistent with evidence that the Petitioning Creditor is not a former attorney bent on recovering an unpaid legal bill but a law firm with a continuing relationship with a client to whom it remains loyal. The Petitioning Creditor's representation of the Debtor ended because the Bankruptcy Court in the Eastern District refused to sanction its appointment, not because bills were not paid. The Petitioning Creditor continued to consult with the Debtor from time to time about the State court litigation long after its formal representation of the Debtor and his wife had ended. (Dep. at 13-14.) Moreover, the Debtor admitted in his deposition that the Petitioning Creditor represented him on other matters in 2007, although he refused to give any details. Based on the entire record, the Court concludes that the Petitioning Creditor still feels a duty of loyalty to the Debtor and his wife and filed the case in their interests, not in the interests of the creditors.

Moreover, the Petitioning Creditor filed this case as a Chapter 11 reorganization rather than as a Chapter 7 liquidation. The Chapter 11 filing triggered the automatic stay and allowed the Debtor seek to pursue his State appeal while arguing that the secured creditor is adequately protected without the filing of a bond (which is exactly what the Debtor argued when he appeared at the second hearing). A Chapter 7 case would produce a prompt sale of the property. Even the Petitioning Creditor could not explain why it filed a Chapter 11 petition against the Debtor rather than a Chapter 7 liquidation case.[6] This was unexplained in the face of the assertion in the creditor's own papers that the property was worth $4.2 million, more than enough to pay Malky and all other

---

[6] In its papers the Petitioning Creditor said only, "we felt that it was only proper that we give the Debtor, a former client, an opportunity to reorganize." (Petitioning Cred.'s Reply Decl., p. 4.)

11

creditors.[7] A Chapter 7 petition, seeking a more effective sale process than a State foreclosure, *might* benefit creditors. A Chapter 11 filing delays all creditors while the Debtor pursues his State appeal.

In addition, the Petitioning Creditor aided the Debtor by filing in the Southern District of New York and avoiding the Court that had dismissed the earlier case. There would have been no basis for the Debtor's voluntary filing in the Southern District; at best, the Debtor pays or helps to pay the rent or maintenance on his daughter's apartment in Manhattan, but this does not establish his residence there. The Debtor said, "whenever I want to go to the city for the pleasure or whatever I want to do and I stay over night two days, three days or whatever, I stay in Manhattan." (Dep. at 10.) This is not enough to establish residence in the Southern District for purposes of 28 U.S.C. § 1408. "For venue purposes, residence has been held to mean a permanent residence, one's home, as distinguished from a mere stopping place for the transaction of either business or pleasure." *In re Frame*, 120 B.R. 718, 723 (Bankr. S.D.N.Y. 1990). Moreover, the Manhattan property was not listed on the Debtor's schedules in his earlier Eastern District filing because, as the Debtor admitted at his deposition, the apartment is "not [his] property." (Dep. at 11.) Nevertheless, the involuntary filing outside of the Eastern District gave the Debtor the opportunity to attempt to avoid the jurisdiction that had earlier dismissed his first case, while not having to start the second case in a venue for which he and his bankruptcy counsel would not have a thread of credible support.

Further, by filing this petition only against the husband and not against Mrs. Abir, the Petitioning Creditor opened additional avenues for its former clients to frustrate the

---

[7] In an affirmation dated November 9, 2007 filed with this Court, Debtor's counsel also adopted this number, relying on a $4.2 million appraisal of the Property.

12

secured creditor's rights without a conceivable benefit to its interests as a creditor. If Malky obtained relief from the automatic stay, the fact that the case was commenced only against the husband and not against the wife would give the wife the ability to raise an issue under § 363(h) of the Bankruptcy Code, which gives joint owners of property certain rights. Moreover, filing against the husband alone makes it possible for the Debtor to attempt to skirt § 362(c)(3) in a subsequent bankruptcy case. In 2005, Congress amended the Bankruptcy Code to limit the protection of the automatic stay for debtors who have had a bankruptcy case dismissed within the past year. The instant involuntary case was filed within one year of the dismissal of the Eastern District case. Thus § 362(c)(3) is apparently applicable in this case, although Malky did not rely on it. In any event, because of the delay caused by this filing, Mrs. Abir has not been in bankruptcy for more than one year, so that if she makes the next filing, she can argue that § 362(c)(3) is not applicable and that she is entitled to the full benefit of the automatic stay in that case. Filing only against the husband created the potential for more legal maneuvering for only the benefit of the Debtor and his wife.

The Debtor cites *In re Kingston Square Assocs.*, 214 B.R. 713 (Bankr. S.D.N.Y. 1997), for the proposition that evidence of concerted action without a showing of fraud on the Court is not collusion that merits dismissal of an involuntary petition for bad faith. In *Kingston Square*, the debtors' principal had solicited creditors to file involuntary Chapter 11 petitions against them, in the face of a bankruptcy-remote provision in the company bylaws, making bankruptcy "unavailable to a defaulting borrower without the affirmative consent of the mortgagee's designee on the borrower's board of directors." *Id.* at 713. In the instant case there are no bankruptcy-remote bylaws applicable to this

13

individual debtor and absolutely no impediment to his filing a second voluntary case. Indeed, the Debtor should suffer no legally cognizable harm from the dismissal of this case, since he can file a second voluntary case in the Eastern District tomorrow and attempt to sustain it if a motion to dismiss is brought.

It bears noting that there is no dispute that the purpose of the present Chapter 11 filing, from the Debtor's point of view, is that it allows him to appeal *Abir II* without filing a bond. Some courts have held that the filing of a voluntary Chapter 11 case to avoid enforcement of an adverse judgment through protection of the automatic stay rather than posting an appeal bond is dispositive on bad faith. *See In re Marsh*, 36 F.3d 825 (9th Cir. 1994); *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986). This Court has held that the filing of a voluntary bankruptcy case to avoid an unfavorable State court judgment, in and of itself, does not necessarily justify dismissal for bad faith. *In re Sletteland*, 260 B.R. 657, 661(Bankr. S.D.N.Y. 2001); *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 403 (Bankr. S.D.N.Y. 2001). In a voluntary case, the crucial inquiry remains whether the debtor has a good faith intent to reorganize and a reasonable probability of emergence from bankruptcy proceedings. *In re Sletteland*, 260 B.R. at 661-62, citing *Baker v. Latham Sparrowbush Assoc.*, (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir. 1991) and *In re C-TC 9th Avenue P'ship*, 113 F.3d 1304, 1309 (2d Cir. 1997). To determine whether a bankruptcy case following an unfavorable State court judgment is filed in bad faith, many factors should be considered, including (i) whether the debtor is able to post a bond and/or pay the judgment; (ii) whether the debtor has transferred assets beyond the reach of creditors; (iii) whether the case is a two-party dispute between the debtor and judgment creditor; (iv) whether the

14

debtor has exhausted its State law remedies in attempting to appeal without posting a bond and whether the State court has ruled on that issue; (v) the expense of the appeal; and (vi) whether the bankruptcy case is an attempt to relitigate the unfavorable State court decision. *In re Sletteland*, 260 B.R. at 663-66.

These are the issues, among others, that a bankruptcy court may decide to consider in the event that this Debtor decides to file another Chapter 11 case in the Eastern District of New York. It is patent, in any event, that the appropriate court to consider these issues is the Court that heard the Debtor's first case. That Court is best able to judge the effect of the dismissal of the first case, agreed to by the Debtor and his counsel, and to examine the full record as to the Debtor's good faith.

The Petitioning Creditor and the Debtor both argue that the action between them did not amount to collusion, which they define as "an agreement to defraud another to do or obtain something forbidden by law," "a secret agreement between two or more parties for a fraudulent, illegal, or deceitful purpose," and "a secret agreement for fraudulent or illegal purpose." (Reply Decl. in Opposition, p. 3.) The question is not whether there was collusion but whether the filing was in bad faith. There is ample evidence it was. As the Court in *Kingston Square* stated, a court must examine the "totality of the circumstances" in ruling on a motion to dismiss. The totality of the circumstances in this case establishes that there are clear grounds for dismissal of this second Chapter 11 case.

15

## CONCLUSION

The involuntary petition is hereby DISMISSED. In light of this relief, it is not necessary to reach Malky's motion for relief from the stay pursuant to § 362(d) or its motion to convert. The Debtor's motion to suspend pursuant to § 305(a)(1) is likewise denied as moot. IT IS SO ORDERED.

Dated: New York, New York
       December 20, 2007

                                              */s/ Allan L. Gropper*
                                              ALLAN L. GROPPER
                                              UNITED STATES BANKRUPTCY JUDGE